**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

HERMAN MILLER, INC.,

                    Plaintiff,

     v.

BELNICK LLC,

                    Defendant.

Case No. 1:18-cv-05012-WMR

**HERMAN MILLER, INC.'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO PRECLUDE TESTIMONY FROM**
**<u>BELNICK DAMAGES EXPERT ROBERT TAYLOR</u>**

**<u>REDACTED PUBLIC VERSION</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     APPLICABLE LAW ..................................................................1

        A.      *Daubert* Standard .................................................................1

        B.      Calculation Of Trademark Damages.....................................3

III.    BACKGROUND ..........................................................................5

IV.     MR. TAYLOR'S OPINIONS SHOULD BE PRECLUDED .........................7

        A.      Mr. Taylor May Not Rely Upon Costs Data That Were
                Produced Long After The Court-Ordered Deadline .............7

        B.      Mr. Taylor Improperly Includes Company-Wide Expenses................8

V.      CONCLUSION............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Unlimited Beverages, Inc.*,
  218 F.3d 1238 (11th Cir. 2000) ........................................................................4

*Bailey v. Allgas, Inc.*,
  148 F. Supp. 2d 1222 (N.D. Ala. 2000).............................................................3

*Cameron v. Peach Cty.*,
  No. 5:02-CV-41-1CAR, 2004 WL 5520003 (M.D. Ga. June 28,
  2004) ................................................................................................................2

*Choice Hotels Int'l, Inc. v. Zeal*,
  135 F. Supp. 3d 451 (D.S.C. 2015) ...................................................................7

*Choice Hotels Int'l v. Mohan*,
  No. 5:10-cv-01655-AKK, 2010 U.S. Dist. LEXIS 156992 (N.D.
  Ala. Oct. 29, 2010)........................................................................................4, 8

*City of Tuscaloosa v. Harcros Chemicals, Inc.*,
  158 F.3d 548 (11th Cir. 1998) ..........................................................................3

*Club Car, Inc. v. Club Car (Quebec) Imp., Inc.*,
  362 F.3d 775 (11th Cir. 2004) ..........................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ........................1, 2, 8

*Fey v. Panacea Mgmt. Grp. LLC*,
  261 F. Supp. 3d 1297 (N.D. Ga. 2017)..............................................................9

*Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*,
  2010 U.S. Dist. LEXIS 66061 (N.D. Ga. Jun. 30, 2010) ...................................4

*Hicken v. Migrant Studios, LLC*,
  No. 8:12-cv-1793-T-17TBM, 2014 U.S. Dist. LEXIS 69122 (M.D.
  Fla. Apr. 11, 2014)........................................................................................4, 8

*Long v. Amada Mfg. Am., Inc.*,
No. CIV.A. 1:02-CV-1235, 2004 WL 5492705 (N.D. Ga. Mar. 31,
2004) ................................................................................................................3

*Maltina Corp. v. Cawy Bottling Co.*,
613 F.2d 582 (5th Cir. 1980) ...........................................................................5

*McClain v. Metabolife Int'l, Inc.*
401 F.3d 1233 (11th Cir. 2005) ........................................................................2

*Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*,
316 U.S. 203, 62 S. Ct. 1022 (1942)..............................................................3, 8

*Nike Inc. v. Variety Wholesalers, Inc.*,
274 F. Supp. 2d 1352 (S.D. Ga. 2003) ..........................................................4, 5

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 17-CV-03597-WHO, 2018 WL 6727826 (N.D. Cal. Dec. 21,
2018) ................................................................................................................3

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
No. 1:04-CV-1082-TWT, 2006 WL 1663357 (N.D. Ga. June 14,
2006) ................................................................................................................8

*Tovey v. Nike, Inc.*,
No. 1:12CV448, 2014 WL 3510636 (N.D. Ohio July 10, 2014) .......................2

*Wheat v. Sofamor, S.N.C.*,
46 F. Supp. 2d 1351 (N.D. Ga. 1999)................................................................3

*Williamson Oil Co. v. Philip Morris USA*,
346 F.3d 1287 (11th Cir. 2003) ........................................................................3

*Wilson v. MarineMax E., Inc.*,
303 F. Supp. 3d 1343 (N.D. Ga. 2018)..............................................................8

**Statutes**

15 U.S.C. § 1117(a) .................................................................................................3

**Other Authorities**

Federal Rules of Evidence 702 ....................................................................1

Fed. R. Evid. 702(b)....................................................................................2

## I.     <u>INTRODUCTION</u>

Herman Miller, Inc. ("Herman Miller") hereby moves to preclude testimony from Belnick LLC's ("Belnick") damages rebuttal expert Robert Taylor.  Mr. Taylor was proffered by Belnick to rebut the testimony of Herman Miller's damages expert Suzanne Heinemann concerning the methodology for calculating Belnick's profits, and more particularly to identify and account for various costs that should purportedly be deducted from Belnick's revenue to arrive at Belnick's profits.  This Motion is made on the grounds that (1) Mr. Taylor relied upon costs data produced after the deadline imposed by the Court's Order (Dkt. 81) on Herman Miller's Motion to Compel, and should not be permitted to do so given the violation of that Order, and (2) contrary to settled law, Mr. Taylor improperly deducted certain company-wide costs that were not attributable to the accused infringing products, *i.e.*, that were not so-called "variable costs" (also called "incremental costs") as they must be to be legally deductible from revenue.

The present Motion overlaps with Herman Miller's concurrent Motion for Partial Summary Judgment as to the damages calculation (and indeed much of the content is the same), but the present Motion seeks the more targeted relief of exclusion of Mr. Taylor.

## II.    <u>APPLICABLE LAW</u>

### A.     <u>***Daubert* Standard**</u>

Rule 702 of the Federal Rules of Evidence provides: "A witness who is qualified

as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) The expert's scientific technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) The testimony is based on sufficient facts or data; (c) The testimony is the product of reliable principles and methods; and (d) The expert has reliably applied the principles and methods to the facts of the case."

As explained by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), to determine the admissibility of expert testimony, a trial court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

The burden of establishing qualification, reliability and helpfulness lies with the party offering the expert opinion. *See McClain v. Metabolife Int'l, Inc*. 401 F.3d 1233, 1238 (11th Cir. 2005).

If an expert fails to explain or justify the bases for his or her conclusions, that

testimony is excludable.[1]  It is likewise axiomatic that a purported expert opinion that is

contrary to applicable law is also per se excludable.[2]

**B.    Calculation Of Trademark Damages**

Pursuant to 15 U.S.C. § 1117(a), "[i]n assessing profits the plaintiff shall be

required to prove defendant's sales only; defendant must prove all elements of cost or

---

[1] Fed. R. Evid. 702(b); *Tovey v. Nike, Inc.*, No. 1:12CV448, 2014 WL 3510636, at \*9 (N.D. Ohio July 10, 2014) ("Absent reliable support for her conclusion, [the expert's] opinion amounts to only speculation, which is generally inadmissible.  No matter how good experts' credentials may be, they are not permitted to speculate.") (internal quotations, alterations, and citations omitted); *Cameron v. Peach Cty.*, No. 5:02-CV-41-1CAR, 2004 WL 5520003, at \*9-11 (M.D. Ga. June 28, 2004) (excluding the opinions of experts who did not provide reliable bases for their opinions); *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1359 (N.D. Ga. 1999) (excluding the testimony of expert who "failed to explain how he reached his conclusions and failed to identify an objective source which indicated that his method and premise were generally accepted by or espoused by a recognized minority of [the relevant academic community].").

[2] *See, e.g.*, *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1322-23 (11th Cir. 2003) (excluding expert who was opining on collusion and where expert's definition of "collusion" stood contrary to the law); *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 567 n.27 (11th Cir. 1998) (noting that expert's "erroneous" opinions "regarding the legal standards applicable to the case" should be excluded); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-WHO, 2018 WL 6727826, at \*16 (N.D. Cal. Dec. 21, 2018) (striking portions of expert report that were based on noninfringement arguments foreclosed by the law); *Long v. Amada Mfg. Am., Inc.*, No. CIV.A. 1:02-CV-1235, 2004 WL 5492705, at \*13 (N.D. Ga. Mar. 31, 2004) ("Thus, to the extent that Plaintiffs' experts seek to testify that OSHA regulations are applicable to manufacturers, distributors, and service companies such as those involved in this case, the Court holds that such opinions would not be reliable inasmuch as they conflict with controlling law."); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1244-45 (N.D. Ala. 2000) (Court excluding testimony of expert whose market analysis ran "contrary to well-established law").

deduction claimed." If the defendant fails to meet its burden of articulating and identifying properly deductible costs, the plaintiff is entitled to disgorge all net revenue. *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 206-07, 62 S. Ct. 1022, 1024-25 (1942) (burden allocation on proving costs in trademark cases mitigates risk of windfall to the infringer); *Hicken v. Migrant Studios, LLC*, No. 8:12-cv-1793-T-17TBM, 2014 U.S. Dist. LEXIS 69122, at *5-7 (M.D. Fla. Apr. 11, 2014) (granting summary judgment awarding infringing revenue where defendant failed to prove costs); *Choice Hotels Int'l v. Mohan*, No. 5:10-cv-01655-AKK, 2010 U.S. Dist. LEXIS 156992, at *15-16 (N.D. Ala. Oct. 29, 2010) (awarding all revenue where defendant failed to prove costs).

In identifying cost deductions from infringing sales, a defendant may only deduct costs that would not have been incurred but for the infringing sales, which are called "variable costs" (or "incremental costs") in reference to the fact that they directly vary depending on the quantity of infringing sales. *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, 2010 U.S. Dist. LEXIS 66061, at *38 (N.D. Ga. Jun. 30, 2010); *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1373 (S.D. Ga. 2003); *see also Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000) (upholding district court's refusal to deduct costs that "would have been incurred even without the sale of the prohibited product"). Variable costs are in contrast to company-wide "fixed"

4

costs, which are costs that the defendant would have incurred regardless of whether the infringing products were sold.

Where infringing products only make up a small percentage of overall sales, there is a presumption that no portion of company-wide expenses should be allocated to them. *Flowers Bakeries*, 2010 U.S. Dist. LEXIS 66061, at *37-39 (defendant is only allowed to deduct a proportional share of "fixed" company-wide expenses if the defendant can show that the infringing product "actually increased [those] expenses" and that the sales of the infringing product were "more than a small percentage of total sales"); *Nike v. Variety Wholesalers*, 274 F. Supp. 2d at 1373 (proportional share of company-wide expenses not deductible where infringing sales were less than 1% of revenue); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586 (5th Cir. 1980) (upholding exclusion of proportional allocation of company-wide expenses where infringing products only constituted 6% of sales).

III.   **BACKGROUND**

In her November 11, 2019 expert report, Herman Miller damages expert Suzanne Heinemann calculated Belnick's net revenue from accused product sales to be ███ ██████ (later updated to be ████████) for the period 2012-2019.  (*See* 11/11/2019 Report attached to accompanying Heinemann Declaration, p.1; *see also* 1/31/2020 Supplemental Report updating figure at Exhibit 2.3, summarizing data provided by

Belnick at a voluminous Excel file labeled BELNICK_053421.)  Notably, Belnick does not dispute this figure.[3]  However, Belnick later served on January 17, 2020 a rebuttal expert report of Robert Taylor, which claimed several cost deductions.  (A copy of Mr. Taylor's Report has been attached as Exhibit 1 to the accompanying Ciardullo Declaration.)

Mr. Taylor's calculations are improper because (1) they rely on new data produced after the deadline ordered by the Court, and (2) regardless, Mr. Taylor improperly attributes general company-wide expenses to the infringing products.  Applying these improper calculations, Mr. Taylor claims that its profits for the period of October 2014 thru July 2019 were ████████.[4]  (*Id.*, p. 6.)  This is significantly less than the amounts calculated in Ms. Heinemann's Supplemental Report using the newly produced data: ████████ for roughly the same period, and ████████ including sales going back to 2012.  (Heinemann Supplemental Report, also attached to accompanying Heinemann Declaration, Exhibit 2.7.)

---

[3] The specific revenue figure is not at issue in this Motion, which is concerned only with the methodology of which cost deductions are allowable.

[4] Belnick incorrectly argues that the fact finder may not consider profits from 2012-2014.  This issue is addressed in other briefing, and does not affect this Motion.

## IV.   MR. TAYLOR'S OPINIONS SHOULD BE PRECLUDED

### A.   Mr. Taylor May Not Rely Upon Costs Data That Were Produced Long After The Court-Ordered Deadline

On April 12, 2019 (almost a year ago), Herman Miller had propounded Requests for Production and Interrogatories pointedly asking Belnick to identify and itemize all claimed expenses it intended to deduct to arrive at its profits. (Ciardullo Decl., ¶2, Ex. 2, RFPs 42-45, Interrogatory 7.) However, as of September 2019, Belnick had not provided any such information. (Ciardullo Decl. ¶ 3.) In view of this lack of evidence, Herman Miller filed a Motion to Compel. (Dkt. 60.) On November 18, 2019, the Court granted Herman Miller's Motion and entered an Order at Dkt. 81 compelling Belnick to produce its financial evidence by November 26, 2019. The close of fact discovery was December 12, 2019. (Dkt. 88.)

The costs data on which Belnick and Mr. Taylor ultimately rely are found in two Excel files – BELNICK_0053421 and 53422 (*see* Footnotes to Taylor Exhibits, at Ciardullo Ex. 1) – that Belnick did not produce until January 13, 2020. (Ciardullo Decl. ¶ 4.) Beyond that, Mr. Taylor's report was not served until January 17, 2020, and Belnick had failed to ever previously articulate its damages calculation or produce any documents that would support it including any particular company expense as a deductible variable cost. (*Id*., ¶ 5.) Although Herman Miller believes Belnick's disclosures are untimely, out of an abundance of caution, Herman Miller had its damages expert, Ms. Heinemann,

prepare a supplemental report addressing the newly-produced data and Mr. Taylor's report.  Ms. Heinemann's Supplemental Report was served on January 31, 2020.

Belnick should not be permitted to benefit from its failure to comply with the Court's Order, and from otherwise failing to articulate its profits calculation in discovery. For example, in the trademark case *Choice Hotels Int'l, Inc. v. Zeal*, 135 F. Supp. 3d 451, 472-75 (D.S.C. 2015), the district court refused to accept defendant's late-produced evidence of costs, and held that the plaintiff could fairly seek all of defendant's ███ ███ in revenue.  Belnick should likewise be barred from relying on its late-produced information, and Herman Miller should be entitled to pursue all infringing net revenue.[5]

## B.    Mr. Taylor Improperly Includes Company-Wide Expenses

Setting aside procedural preclusion, Mr. Taylor's calculations are legally erroneous because they include unjustified allocations from company-wide expenses. Purported expert damages calculations that are unsupported and/or contrary to law may not be allowed under *Daubert*.  As this Court has stated, "if the expert's opinion is so

---

[5] *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 206-07 (1942) (burden allocation on proving costs in trademark cases mitigates risk of windfall to the infringer); *Hicken v. Migrant Studios, LLC*, No. 8:12-cv-1793-T-17TBM, 2014 U.S. Dist. LEXIS 69122, at *5-7 (M.D. Fla. Apr. 11, 2014) (granting summary judgment awarding all infringing revenue where defendant failed to prove costs); and *Choice Hotels Int'l v. Mohan*, No. 5:10-cv-01655-AKK, 2010 U.S. Dist. LEXIS 156992, at *15-16 (N.D. Ala. Oct. 29, 2010) (awarding all revenue where defendant failed to prove costs).

fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc*., No. 1:04-CV-1082-TWT, 2006 WL 1663357, at *4 (N.D. Ga. June 14, 2006) (excluding damages expert because his testimony was based on "excluded facts and claims"); *see also Club Car, Inc. v. Club Car (Quebec) Imp., Inc*., 362 F.3d 775, 780 (11th Cir. 2004) (affirming lower court's decision to strike damages expert's testimony where expert's calculations were based on gross sales, in contravention of Georgia law); *Wilson v. MarineMax E., Inc*., 303 F. Supp. 3d 1343, 1362-63 (N.D. Ga. 2018) (excluding damages expert while stating, in relation to the expert's various conclusions, that the expert provided "no analysis," "no explanation," and "no showing"); and *Fey v. Panacea Mgmt. Grp. LLC*, 261 F. Supp. 3d 1297, 1305 (N.D. Ga. 2017) (excluding damages expert because "she fail[ed] to meaningfully explain" how she arrived at her conclusion).

Herman Miller does not dispute that Belnick could have theoretically deducted certain discrete product-specific expenses – such as direct purchasing costs and actual shipping costs – if Belnick had timely supplied the underlying data.   Indeed, Ms. Heinemann's Supplemental Report applies such expenses (Heinemann Supp. Report, ¶¶ 13-17), though Herman Miller believes Belnick should be barred from relying upon them.   However, Mr. Taylor goes beyond permissible variable costs, and improperly allocates a percentage of certain company-wide expenses to the accused sales:

specifically, (1) general processing fees, (2) bad debt expense, (3) warehouse expense, (4) warehouse salaries, and (5) customer service salaries ("Five Company-Wide Expenses").  (*See* Exhibit 1.4 of the Robert Taylor Report, showing application of percentages of total revenue to various company-wide expenses.)

To do this, Mr. Taylor takes the percentage of those Five Company-Wide Expenses as against total company revenue, and then applies that percentage to infringing revenue.  (*Id*.)  Mr. Taylor confirmed this in his deposition:

> [*Taylor Transcript (attached as Ciardullo Decl. Ex. 3), 34:6-20*]
>
> Q. Explain that to me a little more when you say a revenue-weighted basis.  Well, just go into more detail as to what you mean by that.
>
> A. Well, it's simply taking the income statement, which has total revenues, and then you have all the expense categories underneath it.  And if you take the expense categories as a percent of revenue, the data – sometimes you would use those percentages of total revenue to apply to the lost revenues being claimed here.  So it's simply a relationship that an expense item is a function of revenue.  And that's pretty common.  And we simply use the relationship between total revenues and the expense category and apply that same percent to the lost revenues here.

This is just a blind mathematical apportionment that fails to address whether any of such company-wide expenses actually vary with infringing sales, *i.e.*, whether those company-wide expenses would have been any different at all if Belnick did not sell infringing chairs.  (Heinemann Supp. Expert Report at ¶¶ 11, 16, 20, explaining and critiquing Mr. Taylor's approach.)

That Mr. Taylor nowhere attempts to justify or explain his allocation of the Five Company-Wide Expenses in itself requires excluding his opinions.  (*See* cases cited this Section, *supra*, and Section II.B.)  Mr. Taylor claims that Belnick's CFO, Gabe Johnson, told him to deduct the Five Company-Wide Expenses during a single phone conversation (Taylor Tr., 12:24-17:17), but Mr. Taylor does not describe that phone call in his expert report, or justify his reliance on such hearsay.  Instead, Mr. Taylor just applies the blind mathematical allocation without any analysis.

But more than that, Herman Miller can readily show that such an allocation was, in fact, erroneous and contrary to well-settled Eleventh Circuit law.  The reality is that Belnick sells thousands of different items of furniture, of which the accused products make up *less than 1%* of the total lineup.  (*See* https://sterlinglp.com/company/company-info/27, claiming over 4,300 unique furniture products; *see also* Belnick's retail website BizChair.com, and commercial channel website, FlashFurniture.com.)  As a percentage of annual revenues, the accused products account for **only ▮▮▮▮▮▮ of Belnick's total sales**.[6]  Such a tiny percentage overwhelmingly raises a presumption that the Five

---

[6] *See* Heinemann January 31, 2020 Supplemental Expert Report, Table 3.1, summarizing data provided by Belnick at a voluminous Excel file labeled BELNICK_053421 and concluding that net revenue for the period of infringement was approximately ▮▮▮▮▮▮ , as compared to approximately ▮▮▮▮▮▮ shown in Table 2.3 for accused chairs over the same time period, as also compiled from data provided by Belnick at the same voluminous Excel file labeled BELNICK_053421; *see also* Expert Report of Robert Taylor at Exhibit 1.0 showing

Company-Wide Expenses would be the same regardless of whether the accused products were being sold or not, and hence they cannot be said to vary in any way directly with sales of the accused products.  (*See* Section II.B.)  Certainly Belnick has made no effort to show any direct relationship or to suggest it would not have incurred the same fixed costs even if it had never sold any of the accused chairs, as was its burden.

Strikingly, Mr. Taylor even admitted at his deposition that he was not aware that Belnick sold any products that were not accused of infringement (much less that they only account for ██████ of sales), and that he did not take this into consideration in his analysis:

> [*Taylor Transcript (Ciardullo Ex. 3, 33:12-34:5*]
>
> Q.  Was there any discussion with Mr. Johnson as to products they sold at Belnick other than the ones that were accused of infringement?
>
> A.  No.

---

that he calculates net sales to be almost the same as Ms. Heinemann for the same 2014-2019 time period, *i.e.*, the experts do not meaningfully dispute the net sales calculation.  Note that the Heinemann tables include a *de minimis* amount of sales from products accused of infringing trade dress other than the Eames Aluminum Group, but these numbers are so small as to not affect any of the conclusions herein. Herman Miller does not otherwise expect Belnick to dispute the content of its own financial Excel file at BELNICK_053421.  Thus, due to the impracticality of submitting a voluminous electronic Excel file with this briefing, Herman Miller has declined to do so for the convenience of all involved (and because Belnick designated it Highly Confidential).  Should Belnick contest the content of the file for any reason, Herman Miller requests leave to address the matter at that time.

Q.  Is there any assessment that you made in your report as to the relative ratio of products that were accused of infringement that are sold by Belnick versus products that are not accused of infringement that are sold by Belnick?

A.  No. I think I have the whole financial statement.  So in that sense I took – the questions would have to do with, is this the same of all products that are sold, in other words, if it's unique to these products or not.  And I think that I confirmed with him that there were certain categories where we used percentages of revenues.  And he felt that that was appropriate because it applied to all products and in essence we – on a revenue-weighted basis.  That's how we did that.

Mr. Taylor further admitted not knowing what principles guide profits calculation in the Eleventh Circuit:

[*Taylor Transcript, 9:9-10:11*]

Q.  Do you recall in cases where you would have performed an analysis of the defendant's profits if there were any legal guidelines or restrictions placed on the method by which such profits should be calculated?

A.  No.  …There's guidance.  I would say there's a lot of guidance out there or information that you can reference, but I'm not sure that those are binding in a particular case.

[*Taylor Transcript, 35:9-21*]

Q.  Were you given any guidance as to principles of law that would operate in the Eleventh Circuit for calculating net profits in a trade dress case like this one?

A.  No.  I saw that Heinemann referenced a couple cases.  And actually – well, I saw her reference to it.  But those simply are taking those two cases.  And she's extracting and seems to almost be offering a legal opinion that that's what you should follow.  And I'm not sure that's the case.

13

> Q.  Do you have any specific point of disagreement with those cases that you referenced?
>
> A.  I didn't really review them in detail. …

As Ms. Heinemann explains in her report, there is no evidence that the Five Company-Wide Expenses vary with infringing sales at all, and they would not normally be deducted in general accounting practice where the percentage of relevant sales was so *de minimis*.[7] (Heinemann Supp. Report, ¶¶ 18-25.)  In fact, her own analysis shows that many of the claimed company-wide expenses actually remained flat even as Belnick's overall revenues increased, which is a quick check to show that the costs are not variable. (*Id.*, ¶ 23.)

Ultimately, it is Belnick's burden to prove that claimed expenses varied directly with infringing sales (*see* Section II.B), yet Belnick failed to even address the issue. Therefore, to the extent that the Court does not otherwise preclude Belnick's claimed cost deductions as untimely, Belnick should not be permitted to allocate any portion of the Five Company-Wide Expenses to infringing revenue.  Instead, the profit calculation methodology reflected in Ms. Heinemann's Supplemental Report should be adopted.[8]

---

[7] Ms. Heinemann nonetheless generously allowed ███ per accused product for "warehousing expense" notwithstanding Belnick's burden to prove up such expenses.  (Heinemann Supp. Report, ¶ 24.)

[8] To the extent that any of Mr. Taylor's calculations are not procedurally barred for being based upon untimely data, and further to the extent that any portion of his opinions are simply not in conflict with Ms. Heinemann's Supplemental Report, then

## V.   **CONCLUSION**

For the foregoing reasons, Herman Miller respectfully requests that Mr. Taylor be precluded from testifying in this case.

---

such opinions are redundant and should be excluded because they will not further assist the jury, and instead would only unnecessarily eat up trial time.

Dated:  March 2, 2020

Respectfully submitted,

*s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo (admitted *pro hac*)
email:  jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Phone: 213.972.4500
Facsimile: 213.486.0065

Jonathan E. Moskin (admitted *pro hac*)
email:  jmoskin@foley.com
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, NY 10016-1314
Phone: 212-682-7474
Facsimile: 212-687-2329

Amanda G. Hyland
email:  ahyland@taylorenglish.com
Georgia Bar No. 325115
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339

Attorneys for Plaintiff
HERMAN MILLER, INC.