IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HERMAN MILLER, INC., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>BELNICK LLC, )<br>)<br>Defendant. )<br>) | CASE NO.:<br>1:18-cv-05012-WMR |

## ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF JAMES BERGER

The above matter is before the Court on Plaintiff Herman Miller Inc.'s ("Herman Miller") Motion to Exclude the testimony of Belnick's survey expert, James Berger. [Doc. 103]. Upon consideration of the arguments of the parties, applicable law, and all appropriate matters of record, the Court DENIES the Motion to Exclude for the following reasons.

Mr. Berger is proffered by Belnick in rebuttal to Herman Miller's own survey expert Dr. Basil Englis, who had conducted a consumer survey that concluded that there is a significant amount of consumer confusion between Belnick's accused infringing chairs and the Herman Miller EAMES chairs. [Doc. 103-8 (Expert Witness Report of Basil G. Englis, Ph.D.)]. Herman Miller seeks the exclusion of Mr. Berger's opinion testimony on the grounds that: (1) he does not offer proper

1

rebuttal testimony because his opinion exceeds the "visual appearance" parameters of Dr. Englis's survey on the likelihood of confusion; 2) his opinion is irrelevant and non-responsive to Dr. Enlgis's survey; and 3) he lacks qualification as an expert in the furniture market.

In his rebuttal report, Mr. Berger's primary criticism of Dr. Englis's survey is that it used a "Squirt" format rather than an "Eveready" format to assess the likelihood of confusion. [*See* Doc. 103-4]. Both survey formats are designed to ascertain whether the "likelihood of confusion" element of an infringement claim is present.

When conducting a survey using the Squirt format, consumers are first shown the plaintiff's product or mark, and later separately shown an array of other products or marks that includes the accused infringing one and then asked if they think anything from the array is associated with the first image that they saw. *See Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, No. 18-CV-81606-MIDDLEBROOKS, 2019 WL 7376782, at *3 (S.D. Fla. Sept. 26, 2019) (*citing* 6 McCarthy on Trademarks and Unfair Competition § 32:173.50 (5th ed. 2019)). Many courts and commentators have rejected the Squirt survey format because it is improperly leading and is more likely to produce a higher level of perception that the product or marks identify with or come from the same source (*i.e.*, an inflated number of positive responses). *Id.*; *National Distillers Products Co.,*

*LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 483–484 (S.D.N.Y. 2002).

By contrast, when conducting a survey using the Eveready format, the plaintiff's product or mark is not shown to the consumers, and they are instead only shown the defendant's accused infringing product or mark and then asked open-ended questions to determine whether they believe the product or mark is associated with the plaintiff's product or mark. *See Pinnacle*, 2019 WL 7376782, at *3. The Eveready survey format has become the preferred survey method and is especially appropriate when a plaintiff's mark or trade dress is strong. *Id.*

In his report, Mr. Berger opines that Dr. Englis's assessment of the likelihood of confusion is flawed because his use of the Squirt format improperly leads the survey participants by priming them with a picture of Herman Miller's trade dress as a stimulus before showing them Belick's products, thereby inflating the number of positive responses from the participants. Thus, he opines that the Eveready format, which also relies on visual appearance but places more emphasis on brand recognition, is the appropriate format because Herman Miller's trade dress is alleged to be famous and the Eveready format eliminates the inherent leading tendencies of the Squirt format. [*See* Doc. 103-4].

Herman Miller argues that Mr. Berger's opinion testimony should be excluded because his criticism of the Squirt format and his advocacy of the Eveready format are legally erroneous in the context of a "trade dress" infringement case.

Specifically, Herman Miller argues that, in assessing the likelihood of confusion element, the relevant inquiry is whether consumers are confused by pure visual similarities between its product configuration designs and Belnick's accused designs, not whether consumers are able to identify the designs as being associated with Herman Miller or its EAMES chairs specifically. [*See* Doc. 103-1 at 15-21]. Herman Miller further argues that the Eveready format would eliminate a large swath of participants who are familiar with the unique visual appearance of the EAMES chairs but are unfamiliar with the brand name. [Id.] *See Sunbeam Corp. v. Equity Indus. Corp.*, 635 F. Supp. 625, 631 (E.D. Va. 1986) (on the issue of whether the plaintiff's product design or appearance had attained "secondary meaning," the district court was unpersuaded by the defendant's Eveready survey because it "overlooked those individuals who may have linked the product's overall appearance with a single but anonymous source"). Thus, Belnick contends that Dr. Englis' use of the Squirt format is more appropriate for assessing the likelihood of confusion than Mr. Berger's proffered Eveready format.

Here, however, the Court notes that Herman Miller, in support of its claims in this case, has consistently asserted that the trade dress of its EAMES chairs is not only strong, but that it has achieved such a level of fame that it is deemed "iconic." [*See* Doc. 102-1 at p. 7; Doc. 142 at pp. 9-13]. Assuming that the EAMES chairs' trade dress is as famous as Herman Miller suggests, then it would stand to reason

4

that Mr. Berger's proposed Eveready format would be appropriate in assessing whether the visual appearance of Belnick's chair designs are likely to be confused with Herman Miller's famous EAMES chair designs. *See Pinnacle*, 2019 WL 7376782, at *3 (noting that the Eveready survey format has become the preferred survey method and the "gold standard" in cases involving strong marks).

Under the facts and circumstances of this case, the Court finds that both types of surveys would be useful in determining the likelihood of confusion element of Herman Miller's infringement claim. Although Dr. Englis' report focuses on the "visual appearance" of the chairs, the fact remains that Herman Miller asserts that its trade dress is famous. In light of this fact, Belnick should be allowed to introduce Mr. Berger's opinion testimony to support its rebuttal theory that Dr. Englis used an inappropriate survey format to assess the likelihood of confusion in the specific context of this case.

Herman Miller also seeks to exclude Mr. Berger's purported criticism of the relevant consumers who participated in Dr. Englis's survey. Specifically, Herman Miller contends that Mr. Berger "opined that Dr. Englis erred in targeting consumers who buy chairs for less than $699, arguing that Dr. Englis should instead have limited his survey to the 'high end' market of people who buy chairs for $1,000-$3,000." [Doc. 103-1 at 21]. Citing *Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F. Supp. 2d 1360, 1373 (N.D. Ga. 2010), Herman

5

Miller argues that Dr. Englis's survey was appropriately limited to those participants who would be potential buyers of the alleged infringing products. [Id. at 21-22]. Upon review of Mr. Berger's report, however, the Court finds that Herman Miller misconstrues Mr. Berger's criticism of Dr. Englis's survey on this point. Mr. Berger simply opines that the survey was flawed because Dr. Englis failed to provide the relevant survey participants with any information about the prices of the products or any other contextual information that might reasonably replicate how consumers would actually encounter the products in the marketplace. [Doc. 103-4 at 4 ¶ 5 and at 15 ¶ 16]. This is a fair point of criticism in regard to a survey. *See Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1327 (N.D. Ga. 2008) (emphasizing that a survey's protocol must "take into account marketplace conditions and typical consumer behavior so that the survey may as accurately as possible measure the relevant thought processes of consumers encountering the disputed mark as they would in the marketplace") (citations omitted). Accordingly, Herman Miller motion to exclude Mr. Berger's opinion testimony on this issue is without merit.

Herman Miller also argues that Mr. Berger is not qualified to opine on the furniture market or the marketplace conditions. [Doc. 103-1 at 25-27]. However, Herman Miller fails to cite to any authority that requires a survey expert to also be an expert in market of the specific products tested in the survey, and the Court has found no such authority. Furthermore, the evidence shows that Mr. Berger has an

extensive educational background and work history regarding surveys and the market research that is necessary to conduct such surveys, having authored numerous published articles on the subject. He has also testified in numerous other lawsuits as a survey expert regarding the issues of trademark and/or trade dress infringement and the likelihood of confusion. [Doc. 103-4 at 6-10]. The fact that Mr. Berger is not an expert in the furniture market does not mean that his opinions on the validity and accuracy of Dr. Englis's survey should be excluded.

Mr. Berger is being proffered as a survey expert, and part of conducting a valid and reliable survey to assess the likelihood of confusion of a mark or trade dress is the proper consideration of readily ascertainable market conditions for the products at issue. *See Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d at 1327. In his endeavor to research the relevant marketplace conditions for the furniture at issue in this case, Mr. Berger indicates that he relied on selected trial data and testimony in a separate lawsuit involving Herman Miller and the results of online research pertaining to Charles and Ray Eames, Herman Miller, Inc., and the marketing of the EAMES chair products. [Doc. 103-4 at 11-12]. The Court finds that Berger should be allowed to opine as to the marketplace conditions that he observed in his research in order to explain and provide context for his conclusions. To the extent that Herman disagrees with Mr. Berger's factual assertions or conclusions, it will have an ample opportunity to challenge his findings and conclusions on cross-

examination at trial.

Lastly, Herman Miller takes issue with Mr. Berger's various criticisms regarding the manner in which Dr. Englis conducted his survey. [Doc. 103-1 at 23-25, 28-30]. As Berger's opinions appear to be grounded on accepted survey concepts, Herman Miller's disagreement with Mr. Berger's opinions regarding the perceived flaws in the survey is not a basis to exclude his opinions. Herman Miller will have the opportunity to cross-examine Mr. Berger at trial, and the jury can determine how much weight to give the survey and Dr. Englis's and Mr. Berger's opinions. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345–46 (11th Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Exclude Testimony of James Berger [Doc. 103] is **DENIED.**

IT IS SO ORDERED, this 11th day of January, 2021.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE